Kinkade, J.
 

 This is an action for the recovery of damages for a. personal injury resulting from a fall. The defendant in error, Mrs. Fader, in company with three companions — her husband, his
 
 *719
 
 "brother, and his brother’s wife — went into the store of the S. S. Kresge Company, plaintiff in error, herein referred to as the Kresge Company, at 402 Euclid Avenue in Cleveland, about half past three o’clock on Saturday afternoon, May 3, 1924. It was raining at the time, and had been for some time immediately prior thereto. The four persons walked on the wet sidewalk for some distance before reaching the Kresge Company’s store. The evidence of Mrs. Fader and her companions is in conflict as to the order in which they entered. She testified that she was the first to enter. Her brother-in-law testified that he and his wife preceded Mrs. Fader into the store, going through the same door that she did. Her husband followed her. The four were going to the lunchroom in the basement for lunch, and the stairway to the basement was near to the street door of the store through which they entered. The floor immediately inside of the door was somewhat wet and somewhat slippery, due only to the fact that incoming customers had carried in water on their feet from the sidewalk, and the further fact that some rain had blown in as the door was opened by incoming and outgoing shoppers, many of whom were in the store at the time. Some of the shoppers had umbrellas, the drip from which may have added somewhat to the dampness on the floor.
 

 This wet spot was irregular in shape and extent, and in general was shown by the evidence to be about as wide as the door, and extending from the door inward from three to five feet. It was wet enough to be slippery, and there was moisture enough to soil the coat of Mrs. Fader as she fell
 
 *720
 
 on that spot. Mrs. Fader charged that the Kresge Company was negligent in not having a rubber mat on this particular part of the floor, in permitting this moisture to be on the floor, in not warning customers of the wet floor at this point, and in failing to exclude customers while this condition lasted; and she averred that by reason of this dangerous condition of the floor she slipped and fell immediately after passing through the door, and thereby sustained a serious injury, to her damage in the sum of $25,000, for which she prayed judgment. The Kresge- Company denied all acts of negligence, and denied that Mrs. Fader had sustained any such injury as that claimed by her.
 

 At the close of the evidence offered in chief by Mrs. Fader, and again at the close of all the evidence, the Kresge Company moved the court to direct the jury to return a verdict for the Kresge Company. These motions were overruled, and exceptions saved. The Kresge Company offered no evidence in the case. The jury returned a verdict in favor of Mrs. Fader for $15,000. The trial court gave Mrs. Fader the choice of making a remittitur of $5,000 from the amount of the verdict or having the motion for new trial granted. She elected to make the remittitur named, and thereupon the court overruled the Kresge Company’s motion for a new trial, and entered judgment in favor of Mrs. Fader for $10,000. The Court of Appeals affirmed this judgment, and the Kresge Company prosecutes error here. It assigns as error the action of the court in overruling its motions for a directed verdict, the overruling of its motion for a new trial, that the verdict and
 
 *721
 
 judgment are not sustained by sufficient evidence, or by any evidence, and are contrary to the evidence, and contrary to law, and that the damages are excessive, and were given under the influence of passion and prejudice on the part of the jury.
 

 This is a very simple case in its facts prior to the time of the injury. In view of the conclusion we have reached, we shall pass without comment all of the evidence in the case pertaining to the extent of the injury, pausing only to say that, when a trial court reaches the conclusion that a verdict returned by a jury in a personal injury case is 33-1/3 per cent, greater than it should be, and to that extent higher than the court can sustain, the case is one calling for the closest scrutiny and consideration by the trial judge on the subject of passion and prejudice on the part of the jury.
 

 The Kresge Company offered no evidence. There were substantially no objections made by counsel for the Kresge Company to any of the testimony offered by Mrs. Fader touching the facts attendant which preceded the accident. It is made entirely evident by the record that, on the cross-examination of Mrs. Fader’s witnesses, counsel for the Kresge Company was quite as anxious as was counsel for Mrs. Fader that all the facts should be made entirely plain and definite. It is rare indeed to find a record as free as this from objections and exceptions in the introduction of the evidence.
 

 In disposing of this case, we are accepting the testimony offered in support of Mrs. Fader’s claims about the facts pertaining to the accident, and prior to the accident, as true. She went into the store as an invited shopper, with all the rights
 
 *722
 
 that any shopper has in entering any store, and the store owed her the same degree of care that all stores owe all patrons who enter; that is to say, the store owed her the duty to exercise ordinary care for her protection against injury while in the store.
 

 There was some testimony in the case given by one witness, who was present inside and near the door when Mrs. Fader fell, that the condition of the floor where Mrs. Fader fell was the same as it was when this witness entered the store some 30 minutes before Mrs. Fader did. We are taking this as a fact concerning the time the condition had continued.
 

 There were no defects in the floor itself. No claim is made that it was other than level, or that it was improperly constructed or surfaced in any manner. There was no soap or soapy water on the floor; no grease on the floor. There was nothing of any kind on the floor except the rainwater which got there in the manner stated.
 

 There was no evidence in the case that the Kresge Company did anything or omitted to do anything which storekeepers of ordinary care and prudence generally, under similar circumstances, omit to do or do for the protection of their patrons.
 

 It is a fact known to all that many stores in all branches of trade have an inside door or passageway into the store, usually in the middle of the front. On each side of this passageway is a display window. The passage then extends back ten or twelve feet or more to the entrance door to the store. This passage usually has a slight slope from the door to the sidewalk, at which line there is no
 
 *723
 
 door. This slope is to carry away the rain that may blow into the passageway. The passageway is in fact practically a part of the sidewalk, but at the same time it is within the front line of the store, and under control of the store. Would any one contend that, if a person walked into such passageway when it was raining, and there slipped and fell, he could recover damages because there was moisture on the floor of the passageway? Manifestly not. Everybody knows that, when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near the door on the inside damp to some extent, and every one knows that a damp floor is likely to be a little more slippery than a dry floor. In this instance Mrs. Fader knew that her own shoes were wet when she went in there out of the rainstorm, and after walking on the wet sidewalk. Two of her companions who preceded her crossed the same wet spot as she did, and did not fall, and the one of them who testified in the case said that he did not turn and warn her about the wet spot, as there was nothing about it to indicate to him that it presented any danger — a very frank and a very natural statement.
 

 Owners or lessees of stores, office building, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come. Everybody knows that the hallways between the outside doors of such buildings and the elevators or business counters inside the building during a continued rainstorm are tracked all over by the wet feet of people com
 
 *724
 
 ing from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be. The same thing is true in the hallways of all post offices. It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail.
 

 It should be borne in mind that this accident did not happen in some dark walkway in the store where the shopper found it necessary to go. It occurred in broad daylight, and there is no pretense that there was anything to prevent any shopper from seeing and knowing precisely what the conditions were.
 

 Not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from some one. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured. The character or extent of an injury has no bearing upon the question of the liability therefor; neither has the wealth nor the poverty of either party to such a litigation anything to do with the question of liability for the accident.
 

 There is no evidence in this case tending to prove, much less proving, that the Kresge Company was guilty of negligence in any particular as charged by Mrs. Fader in her petition. The trial court should have granted the motions of counsel for the Kresge Company for a directed verdict in
 
 *725
 
 its favor. Failing in this, the Court of Appeals should have reversed the judgment of the trial court and entered final judgment for the Kresge Company.
 

 The judgments of both courts will be reversed and final judgment entered here in favor of the plaintiff in error.
 

 Judgments reversed.
 

 Marshall, C. J., Day, Robinson, Jones and Matthias, JJ., concur.
 

 Allen, J., concurs in proposition 1 of syllabus and in the judgment.